IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARNETTA GADLING-COLE, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 11-0796 (JBS) |
| v. | : | |
| WEST CHESTER UNIVERSITY, et al., | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Jacqueline M. Vigilante, Esq.
THE VIGILANTE LAW FIRM PC
8D High Street
Mullica Hill, NJ 08062
    Attorney for Plaintiff Charnetta Gadling-Cole

Kevin R. Bradford, Deputy Attorney General
OFFICE OF THE ATTORNEY GENERAL
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107
    Attorney for Defendants West Chester University, Eli DeHope,
    Claire Dente, Janet Bradley, Rick Voss and Michelle
    Belliveau

**SIMANDLE,** District Judge:[1]

I.  **INTRODUCTION**

    This matter is before the Court on the motion of Defendants

West Chester University, Eli DeHope, Claire Dente, Janet Bradley,

Rick Voss and Michelle Belliveau (collectively "Defendants") to

dismiss Plaintiff Charnetta Gadling-Cole's complaint. [Docket

---

    [1] The undersigned is Chief Judge of the U.S. District Court
for the District of New Jersey, sitting by designation pursuant
to 28 U.S.C. § 292(b).

Item 6.]   Plaintiff Charnetta Gadling-Cole ("Plaintiff") filed an amended complaint in response to the motion to dismiss.  [Docket Item 10.]   Defendants then filed a second motion to dismiss in response to the amended complaint.  [Docket Item 12.]   The Plaintiff filed opposition to this second dismissal motion.  [Docket Item 13.]   For the reasons discussed below, the Defendants' first motion to dismiss [Docket Item 6] will be DISMISSED AS MOOT and the Defendants' second motion to dismiss [Docket Item 12] will be GRANTED IN PART and DENIED IN PART.

## II.  BACKGROUND

The instant action arises out of alleged religious discrimination suffered by the Plaintiff while she was employed as a Frederick Douglas Visiting Scholar at West Chester University.

For purposes of this motion, the Amended Complaint's allegations are taken as true.  The Plaintiff began her employment in the Department of Social Work at West Chester University as a Frederick Douglas Visiting Scholar in January, 2008.  (Am. Compl. ¶¶ 11, 15, 17.)  The Plaintiff was employed as an adjunct professor and assigned to teach Human Behavior and the Social Environment II.  (Am. Compl. ¶ 17.)

The Social Work Department consists of five tenure-track faculty members:  Defendants Eli DeHope, Claire Dente, Janet Bradley, Rick Voss and Michelle Belliveau ("Faculty Defendants").

(Am. Compl. ¶ 21.)   All five faculty members were members, supporters and/or advocates of the Lesbian, Gay, Bisexual, Transgender and Queer ("LGBTQ") community.  (Am. Compl. ¶ 22.) The tenured faculty members openly published their support for the LGBTQ community and requested that the Plaintiff similarly advocate and support these alternative lifestyles.  (Am. Compl. ¶ 24.)

The Plaintiff is a Baptist and her religious beliefs conflicted with supporting the alternative lifestyles of the Lesbian, Gay, Bisexual, Transgender and Queer community.  (Am. Compl. ¶¶ 11, 21.)  Consequently, the Plaintiff did not openly support the LGBTQ community, despite the requests of the Faculty Defendants.  (Am. Compl. ¶ 20.)

At all relevant times, the Faculty Defendants knew that Plaintiff's religious beliefs precluded her from supporting the LGBTQ community.  (Am. Compl. ¶ 26.)  However, the Faculty Defendants allegedly targeted the Plaintiff and subjected her to discriminatory treatment as a result of her failure to advocate on behalf of the LGBTQ community.  (Am. Compl. ¶ 34.)  Some examples of this discriminatory treatment include faculty members criticizing Plaintiff for her lack of familiarity with the LGBTQ community, refusing to collaborate on projects with the Plaintiff, and excluding the Plaintiff from meetings.  (Am. Compl. ¶ 34.)

In January 2009, the Plaintiff applied for a tenure-track, Assistant Professor position with Defendant West Chester University ("West Chester"). (Am. Compl. ¶ 35.) The Plaintiff met all of the requirements for the position and was one of two candidates selected for interviews. (Am. Compl. ¶¶ 36-42.) The other candidate was allegedly a member and/or supporter of the LGBTQ community and did not have religious beliefs that conflicted with these alternative lifestyles. (Am. Compl. ¶ 43.) However, this candidate was allegedly not qualified for the position because she did not have prior undergraduate level teaching experience. (Am. Compl. ¶ 44.)

The search committee assembled to interview the candidates for the Assistant Professor position consisted of all five of the Faculty Defendants. (Am. Compl. ¶ 46.) Prior to the Plaintiff's interview, the Plaintiff was contacted by Faculty Defendant DeHope who informed the Plaintiff that she was not a "good fit" for the Department. (Am. Compl. ¶ 48.) The Plaintiff immediately contacted the Chairperson of the Undergraduate Social Work Department, Dr. Mildred Joyner, and complained of DeHope's hostile and offensive conduct. (Am. Compl. ¶ 49.)

The Plaintiff was interviewed on February 12, 2009 by the Faculty Defendants. (Am. Compl. ¶ 51.) During this interview, some of the Faculty Defendants did not attend and the Plaintiff was treated with hostility by the remaining Faculty Defendants

4

who refused to interact with her during the interview. (Am. Compl. ¶ 51.) Some Faculty Defendants made sarcastic comments when the Plaintiff spoke and stressed the importance of fitting in with the rest of the department. (Am. Compl. ¶ 51.)

After the interview, Faculty Defendant Rick Voss reached out to one of Plaintiff's recommenders and left him five voice mail messages in one day, as well as an email where Defendant Voss questioned the recommender on how long he has known the Plaintiff and in what capacity he knows her. (Am. Compl. ¶ 52.) The other candidate's recommenders were not similarly treated. (Am. Compl. ¶ 53.)

The Plaintiff was concerned about the hostility she encountered during her interview and requested and scheduled a meeting with Faculty Defendant Michelle Belliveau. The Plaintiff also met with the Director of Social Equity about the hostility she experienced from the search committee. (Am. Compl. ¶ 54.) Once Defendant Belliveau learned that Plaintiff had complained to the Director of Social Equity, Belliveau refused to participate in and cancelled the meeting with the Plaintiff. (Am. Compl. ¶ 56.)

On February 24, 2009, the Plaintiff was informed that she was not selected for the Assistant Professor position. (Am. Compl. ¶ 58.) The search committee nominated the other candidate for hire, who was a member of the LGBTQ community, even though

the other candidate was allegedly not qualified for the position.
(Am. Compl. ¶ 59.)  However, as a result of the discrimination in
the selection process, the Dean subsequently cancelled the
recruitment and hiring process.  (Am. Compl. ¶ 62.)

On February 25, 2009, after she was told she was not
selected, the Plaintiff complained about the religious
discrimination in the search process to West Chester's Department
of Social Equity.  (Am. Compl. ¶ 67.)  On February 27, 2009, the
Plaintiff filed a Social Equity Complaint with Defendant's Office
of Social Equity where she requested that her discriminatory
treatment and hostile work environment allegations be
investigated.  (Am. Compl. ¶ 67.)

The Faculty Defendants were aware that the Plaintiff had
filed a complaint with the Department of Social Equity and in the
following months subjected the Plaintiff to discriminatory and
retaliatory treatment.  (Am. Compl. ¶¶ 69-70.)  The Plaintiff
received emails from an LGBTQ student undermining the Plaintiff's
authority as a professor; the Plaintiff experienced hostile
treatment and behavior from LGBTQ students in her classes; and
the Faculty Defendants did not support any educational events
organized by the Plaintiff and instead, discouraged student
attendance to those events by telling students that they would
receive an unexcused absence.  (Am. Compl. ¶ 70.)

On April 2, 2009, Plaintiff's Social Equity Complaint was

transferred to West Chester's Office of Human Resources for an investigation.  (Am. Compl. ¶ 73.)

On May 4, 2009, the Plaintiff spoke with Patricia Seningen, an employee of West Chester who was the investigator/fact-finder in Plaintiff's Social Equity Complaint investigation.  The Plaintiff expressed concern for the faculty treatment of Dr. Joyner who was allegedly treated with hostility following her assistance to the Plaintiff.  The Plaintiff also complained about the alleged racially discriminatory behavior of the Faculty Defendants towards the Plaintiff, Dr. Joyner and Dr. Williams (a former professor), who were the only black professors in the Undergraduate Department of Social Work.  (Am. Compl. ¶¶ 74-76.)

The Plaintiff alleges that West Chester failed to conduct an adequate investigation of Plaintiff's complaint and failed to take any prompt remedial action to address the discriminatory and hostile work environment.  (Am. Compl. ¶ 79.)

In May 2009, the hostility directed at the Plaintiff by the Faculty Defendants was allegedly so severe or pervasive that it interfered with Plaintiff's ability to perform her duties as an adjunct professor and the Plaintiff ceased her employment with West Chester, and claims she was constructively discharged.  (Am. Compl. ¶¶ 79-80.)  The position of Assistant Professor was later filled by a candidate other than the Plaintiff.  (Am. Compl. ¶ 86.)

The Plaintiff then filed the instant action against the Defendants.  [Docket Item 1.]  In her amended complaint, the Plaintiff alleges violations of Title VII based on the Defendants alleged religious discrimination.  The Plaintiff also brings suit pursuant to 42 U.S.C. § 1983 and alleges violations of her First Amendment right to free speech and her Fourteenth Amendment right to equal protection.

The Defendants then filed the instant motion to dismiss. The Defendants seek to dismiss all counts alleged in Plaintiff's amended complaint.

## III.  DISCUSSION

### A.  Standard of Review

In order to give defendant fair notice, and to permit early dismissal if the complained-of conduct does not provide adequate grounds for the cause of action alleged, a complaint must allege, in more than legal boilerplate, those facts about the conduct of each defendant giving rise to liability.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007); Fed. R. Civ. P. 8(a) and 11(b)(3).  These factual allegations must present a plausible basis for relief (i.e., something more than the mere possibility of legal misconduct).  See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1951 (2009).  In its review of a motion to dismiss pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court must "accept all factual allegations as true and construe the complaint in the

light most favorable to the plaintiff." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

The assumption of truth does not apply, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S.Ct. at 1949.

### B. Defendants' First Motion to Dismiss is Moot

The Defendants do not contest that their first motion to dismiss was mooted by the Plaintiff's subsequent filing of an amended complaint. Therefore, the Court will dismiss the Defendants' first motion to dismiss [Docket Item 6] as moot and move forward to address the merits of Defendants' second motion to dismiss.

### C. Plaintiff's Title VII claims against Faculty Defendants

The Plaintiff alleges in Counts I and II that the Faculty Defendants violated Title VII by engaging in religious discrimination in the hiring/promotion process (Count I) and by creating a hostile work environment (Count II).

The Defendants move to dismiss these claims against the individual Faculty Defendants because individuals cannot be sued under Title VII. The Plaintiff does not oppose the dismissal of these claims.

It is well settled that individual employees cannot be held

liable under Title VII.  Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1078 (3d Cir. 1996)("Congress did not intend to hold individual employees liable under Title VII.").

Therefore, Counts I and II will be dismissed as to the individual Faculty Defendants.

**D.  Plaintiff's Title VII claims against West Chester**

The Plaintiff alleges four counts against West Chester for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq.  First, the Plaintiff alleges that West Chester violated Title VII by engaging in religious discrimination during the hiring/promotion process (Count I). Second, the Plaintiff alleges West Chester created a hostile work environment (Count II).  Next, the Plaintiff alleges West Chester engaged in employment discrimination in violation of Title VII (Count III).  Finally, the Plaintiff brings a retaliation claim pursuant to Title VII against West Chester (Count IV).

Defendant West Chester argues that all of these counts should be dismissed because the Plaintiff's claims, though pled as religious discrimination claims, are in essence claims based on sexual orientation discrimination which are not actionable under Title VII.  West Chester relies primarily on Prowel v. Wise Business Forms, Inc., 576 F.3d 285 (3d Cir. 2009), in support of its argument.

The Plaintiff opposes this motion and argues that Prowel is

10

distinguishable from the instant case.  The Plaintiff concedes
that the Third Circuit held in Prowel that sexual orientation
discrimination is not actionable under Title VII.  However, the
Plaintiff maintains that her complaint sufficiently alleges
religious discrimination, which is cognizable under Title VII.
Specifically, the Plaintiff argues that she has alleged
discrimination based on her bona fide religious beliefs that
require her to reject the LGBTQ community.  The Plaintiff
maintains it was because of her beliefs and not her
heterosexuality that she was targeted by the Faculty Defendants
and subjected to a hostile work environment. Therefore, the
Plaintiff contends that her Title VII claims are actionable and
should not be dismissed.

Title VII provides that it is an unlawful employment
practice for an employer "to fail or refuse to hire or to
discharge any individual, or otherwise to discriminate against
any individual with respect to his compensation, terms,
conditions or privileges of employment, because of such
individual's . . . religion." 42 U.S.C. § 2000e-2(a).[2]  In
addition to protecting employees from religious discrimination

---

[2] Religion is defined as "aspects of religious observance
and practice, as well as belief, unless an employer demonstrates
that he is unable to reasonably accommodate to an employee's or
prospective employee's religious observance or practice without
undue hardship on the conduct of the employer's business."  42
U.S.C. § 2000e(j).

against them on the basis of their beliefs, Title VII also
protects employees from forced religious conformity. Prowel, 579
F.3d at 292 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17,
20 (1993)).

While Title VII makes it unlawful for an employer to engage
in religious discrimination, the Third Circuit has held that
"Title VII does not prohibit discrimination based on sexual
orientation." Bibby v. Philadelphia Coca Cola Bottling Co., 260
F.3d 257, 261 (2001). The Third Circuit explained that "Congress
has repeatedly rejected legislation that would have extended
Title VII to cover sexual orientation." Id. Furthermore, the
Third Circuit has held that a claim for sexual orientation
discrimination which is artfully pled as a claim for religious
discrimination is not cognizable under Title VII and must be
dismissed. Prowel, 579 F.3d at 293.

In Prowel, the plaintiff was a homosexual employee who
suffered harassment from his coworkers for being gay and
effeminate. Id. at 287-88. This harassment included coworkers
leaving anonymous prayer notes on his work machine as well as
messages that the plaintiff was a sinner and would burn in hell.
Id. at 288. Coworkers also gave the plaintiff religious
pamphlets and encouraged him to change his lifestyle. Id.

The plaintiff in Prowel alleged that he was subjected to
religious discrimination because he failed to conform to the

12

religious beliefs of his employer.  Specifically, the plaintiff
admitted that "the only way in which he failed to conform to his
co-workers' religious beliefs was by virtue of his status as a
gay man."  Id. at 293.  The only tenet of his employer's
religious beliefs to which the plaintiff failed to conform was
"that a man should not lay with another man."  Id.

The Third Circuit found these arguments insufficient to
maintain a claim of religious discrimination under Title VII.  In
particular, the Third Circuit reasoned:

> Prowel's identification of this single "religious" belief
> leads ineluctably to the conclusion that he was harassed
> not "because of religion," but because of his sexual
> orientation.  Given Congress's repeated rejection of
> legislation that would have extended Title VII to cover
> sexual orientation, see Bibby, 260 F.3d at 261, we cannot
> accept Prowel's de facto invitation to hold that he was
> discriminated against "because of religion" merely by
> virtue of his homosexuality.

Id. at 293.  The Third Circuit determined that "Prowel's
religious harassment claim is based entirely upon his status as a
gay man."  Id.  The Third Circuit held that the plaintiff's
religious discrimination claim was in essence a claim for sexual
orientation discrimination which was not cognizable and
therefore, Prowel's Title VII claim for religious discrimination
was dismissed.  Id.

This case is distinguishable from Prowel.  Unlike the
plaintiff in Prowel, here the Plaintiff's claims are not based
entirely on her status as a heterosexual.  Rather, the Plaintiff

alleges that she was targeted because of her religious belief that LGBTQ alternative lifestyles were morally wrong.  As a result of these personal religious beliefs, she did not support or advocate on behalf of the LGBTQ community and suffered a hostile work environment and harassment from her fellow coworkers and ultimately was not offered the Assistant Professor position.

While Plaintiff's claims for religious discrimination are based on the single religious belief that a man should not lay with another man, this does not make Plaintiff's claim any less cognizable under Title VII.  Here, the complaint alleges Plaintiff suffered harassment because of her religious beliefs and not because of her heterosexual orientation.  This is distinguishable from the plaintiff in Prowel, who also alleged discrimination based on the same singular religious belief, but whose claims were based on the harassment Prowel suffered because he was a homosexual.  In this case, Plaintiff's claims are not based on her sexual orientation.  Plaintiff's claims are not dependent on her sexual orientation but instead are wholly based on her religious beliefs.

The Defendant also argues that if Plaintiff's claims are not dismissed, then discrimination based on an employee or employer's position on countless social or political topics, such as abortion, the death penalty and foreign wars, would become actionable under Title VII so long as it coincided with the

14

employee's religion's position on the matter.  The court finds
this argument unpersuasive as several courts have held that Title
VII claims for religious discrimination are cognizable for topics
which overlap both the religious and political spectrum, such as
abortion, as long as the claims are based on a plaintiff's bona
fide religious belief.  See Menges v. Blagojevich, 451 F. Supp.
2d, 992, 1003 (C.D. Ill. 2006)(finding pharmacists stated a claim
under Title VII for religious discrimination based on their
religious opposition to abortion and emergency contraceptives);
E.E.O.C. v. University of Detroit, 904 F.2d 331 (6th Cir.
1990)(finding a professor's claim valid where professor alleged
religious discrimination in violation of Title VII when
professor's union required payment of an agency fee which went to
an organization that supported abortion);  E.E.O.C. v. American
Federation of State, County and Mun. Employees, AFL-CIO, 937 F.
Supp. 166 (N.D.N.Y. 1996)(finding employee stated a claim for
religious discrimination under Title VII when employee's union
required payment of an agency fee which went to an organization
that supported the death penalty and abortion and the employee's
religious beliefs did not support those issues).

    However, this opinion should not be construed to forestall
any future argument as to whether Plaintiff's alleged professed
religious belief is sufficient for Title VII purposes.  On a Rule
12(b)(6) motion, the Court is bound to take the Plaintiff's

factual allegations as true.  At this early procedural posture, the Court does not have the benefit of discovery to determine whether the Plaintiff was discriminated against because of her Baptist religion or rather was disliked by the Social Work department because of her personal animosity towards the LGBTQ community.  Once a record is developed, the court will have the ability to examine relevant factors in determining whether the Plaintiff was discriminated against because of her Baptist faith including for example: whether the Faculty Defendants were aware the Plaintiff was a Baptist, whether discussions about Plaintiff's religion occurred, whether derogatory comments about the Plaintiff's Baptist faith were made, whether the Plaintiff was forced to conform to another's religious precepts and whether the Plaintiff was the only member of the Social Work Department required to advocate on behalf of the LGBTQ community or alternatively whether Plaintiff was treated the same as non-Baptist employees. Harris v. Supervalu Holdings-PA LLC, 262 Fed. Appx. 470 (3d Cir. 2008)(affirming district court's dismissal of plaintiff's religious discrimination claim because in part there was no evidence that non-Muslim employees were treated more favorably than Muslim employees); Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 278 (3d Cir. 2001)(finding a plaintiff must present sufficient evidence that her workplace is permeated with discriminatory intimidation, ridicule and insult

that is sufficiently severe or pervasive to alter the conditions of the victim's employment in order to establish a hostile work environment claim based on religious discrimination).

In addition, on a motion for summary judgment, the parties will be able to address whether Plaintiff's refusal to support the LGBTQ community created an undue hardship on West Chester's Social Work Department and whether Plaintiff's animus prevented the effective teaching and counseling of students.  On a motion to dismiss, the court cannot easily discern whether the Defendants' alleged mistreatment was motivated by anti-Baptist animus or by a more benign difference of opinion about how best to serve the educational requirements which are necessary for a successful and effective social work department.  See Hafford v. Seidner, 183 F.3d 506, 514 (6th Cir. 1999)(dismissing religious discrimination claim for hostile work environment because objections to plaintiff's behavior were legitimate in the context of plaintiff's employment and alleged misconduct by the defendants was limited to offhand comments and isolated incidents which were not severe enough to amount to discriminatory changes in the terms and conditions of employment); Abramson v. William Paterson College of New Jersey, 260 F.3d 265, 277 (3d Cir. 2001), 260 F.3d at  277 (holding that hostile work environment claim based on religious discrimination must be established by evidence which shows the alleged discriminatory conduct was attributable

to the plaintiff's religious faith and practice).

However, on a motion to dismiss, the Court is bound by the allegations contained in the complaint and the central inquiry under Title VII is whether the alleged religious discrimination occurred because of an employee's religious beliefs. Here, the complaint adequately alleges the discrimination by the Defendants occurred because of the Plaintiff's bona fide religious beliefs.

Therefore, the Defendants' motion to dismiss Plaintiff's Title VII claims will be denied.

**E.  Plaintiff's First Amendment claim**

The Plaintiff alleges that the Faculty Defendants in their individual capacities violated Plaintiff's First Amendment right to free speech and brings a claim against these individual defendants pursuant to 42 U.S.C. § 1983.

Specifically, the Plaintiff alleges that she engaged in protected speech on six different occasions:

> 1) Prior to the Assistant Professor position interview process, the Plaintiff contacted Dr. Mildred Joyner, the director and chairperson of the Undergraduate Social Work Department, to complain of Defendant DeHope's hostile and offensive conduct. (Am. Compl. ¶¶ 47-50.)

> 2) During the interview process, Plaintiff complained to the Director of Social Equity about hostility she experienced from the search committee. (Am. Compl. ¶¶ 54-55.)

> 3) After the interview process concluded, on February 25, 2009, Plaintiff again complained about the religious discrimination in the search process to the Department of Social Equity at West Chester University. (Am. Compl. ¶¶ 65-66.)

4) On February 27, 2009, Plaintiff filed a written Social Equity Complaint with West Chester University's Office of Social Equity requesting that her discriminatory treatment and hostile work environment allegations be investigated. (Am. Compl. ¶¶ 67-68.)

5) On May 4, 2009, Plaintiff communicated with Patricia Seningen, an employee of West Chester University and investigator/fact-finder in Plaintiff's Social Equity Complaint investigation and complained of discrimination and hostile work environment, and specifically expressed concern for the faculty treatment of Dr. Joyner. (Am. Compl. ¶¶ 74-75.)

6) Also in May 2009, Plaintiff complained of racial discrimination by the Faculty Defendants against Plaintiff, Dr. Larry Williams (a former professor), and Dr. Joyner, who were the only black professors in the Undergraduate Department of Social Work. (Am. Compl. ¶¶ 76-77.)

The Defendants argue that the Plaintiff's First Amendment claim should be dismissed. First, the Defendants maintain that the Plaintiff was not speaking as a citizen, and therefore her speech was not protected by the First Amendment. Second, the Defendants argue that the Faculty Defendants did not have sufficient personal involvement to warrant the imposition Section 1983 liability.

The Plaintiff argues in opposition that she was speaking as a citizen and her speech should be afforded First Amendment protection. The Plaintiff also maintains that the Faculty Defendants were sufficiently involved and should be liable under Section 1983.

"To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by

the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." <u>Gorum v. Sessoms</u>, 561 F.3d 179, 184 (3d Cir. 2009)(citations omitted). The question of whether the activity is protected is a question of law. <u>Id.</u>

A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern,[3] and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statements he made. <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 241 (3d Cir. 2006)(citing <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006)).

A court may consider several factors when determining whether a public employee spoke as a citizen. First, when an employee makes a statement pursuant to her official duties, she is not speaking as a citizen. <u>Garcetti</u>, 547 U.S. at 423-24; <u>Gorum</u>, 561 F.3d at 184. A court may also consider whether the employee made the statements in a public forum, though this

---

[3] The court will not discuss whether Plaintiff's statements were a matter of public concern because this is an issue that cannot be resolved at this early stage of the litigation. A court cannot determine in the procedural posture of a Rule 12(b)(6) motion "whether the speech involved a matter of public concern. That determination must be made after an examination of the content, form and context of [the] statement, as revealed by the whole record." <u>Hill v. Borough of Kutztown</u>, 455 F.3d 225, 243 (3d Cir. 2006)(citations omitted).

factor alone is not dispositive.

> Employees who make public statements outside the course
> of performing their official duties retain some
> possibility of First Amendment protection because that is
> the kind of activity engaged in by citizens who do not
> work for the government. The same goes for writing a
> letter to a local newspaper, see Pickering, supra, 88
> S.Ct. 1731, or discussing politics with a co-worker, see
> Rankin, 483 U.S. 378, 107 S.Ct. 2891. When a public
> employee speaks pursuant to employment responsibilities,
> however, there is no relevant analogue to speech by
> citizens who are not government employees.

Garcetti, 547 U.S. at 423-24.

The Supreme Court has been clear that "while the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance." Id. at 420.

In this case, with the exception of Plaintiff's complaints about the perceived racial discrimination towards Dr. Joyner and Professor Williams, Plaintiff's complaints to the Social Equity Committee and Dr. Joyner are in essence employment grievances about her refusal to support the LGBTQ community during her fellowship and in applying for the Assistant Professor position. The Plaintiff's complaint alleges that the Faculty Defendants in the Social Work Department told her that they expected her to advocate for the LGBTQ community and that she would not fit into the Social Work Department if she did not support these alternative lifestyles. In essence, the complaint alleges that support of the LGBTQ community was a responsibility of employment

for faculty members of the Social Work Department.

Plaintiff's complaints to the Social Equity Committee and Dr. Joyner were grievances about whether her employment responsibilities included advocating on behalf of the LGBTQ community, which was the viewpoint of the Faculty Defendants, and the resulting hostility Plaintiff experienced after she refused to support these alternative lifestyles. As employee grievances, Plaintiff's statements are not considered protected activity under the First Amendment because they were not made outside the course of the Plaintiff's employment and instead related only to her own workplace interests.

The conclusion that Plaintiff's statements were fundamentally employee grievances is further supported by the fact that the Plaintiff followed the internal employee grievance procedure to address her concerns and did not assert her statements in a public forum.

Therefore, Plaintiff's statements to the Social Equity Committee and Dr. Joyner were not made as a citizen because Plaintiff's statements were employee grievances relating to the Faculty Defendants' characterization of her responsibilities of employment and her own individual workplace interests. Differing opinions about the nature of her faculty responsibilities and loyalties are employment-related discussions that do not rise to the level of protected speech under the First Amendment.

22

In contrast, the Plaintiff's complaint with regard to the alleged racial discrimination against Plaintiff, Professor Williams and Dr. Joyner cannot be considered an employee grievance.  This complaint did not relate to Plaintiff's employee responsibilities as a faculty member in the Social Work Department and was made outside the course of Plaintiff's employment duties.

However, while this statement may be considered protected activity, the Plaintiff's complaint does not state a claim for First Amendment retaliation on the basis of this statement.  The Plaintiff has failed to allege sufficient facts to support a finding that the Plaintiff's complaint about the alleged racial discrimination was a substantial factor in the Defendants' alleged retaliatory action.

In particular, this complaint was made to the investigator assigned to Plaintiff's Social Equity Complaint in May 2009, shortly before Plaintiff left her position at West Chester. There are no allegations that the Faculty Defendants even knew that the Plaintiff had made this additional complaint of race discrimination let alone that this complaint was a substantial factor in the hostile work environment allegedly created by the Faculty Defendants.  Rather, the complaint alleges that the hostile work environment was created well before this May 2009 complaint and was due to the Plaintiff's refusal to support the

LGBTQ community based on her religious beliefs.

Therefore, while the Plaintiff's complaint regarding alleged racial discrimination was protected activity, the Amended Complaint herein does not allege sufficient facts to establish that this complaint was a substantial factor in the Faculty Defendants' alleged retaliatory action. From the facts and circumstances alleged in the pleadings, it appears that her statements to the internal investigator regarding race discrimination could not have been a substantial factor in the actions by Defendants of which Plaintiff complains.

Accordingly, Plaintiff's claim against the Faculty Defendants for violations of her right to free speech under the First Amendment will be dismissed with prejudice. A court may deny leave to amend a complaint with prejudice if the amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). The Plaintiff has already amended her complaint once in response to the Defendants' first motion to dismiss, which required the Defendants to file a subsequent motion to dismiss. This amendment failed to cure the above deficiencies and to allow further amendment would be inequitable to the Defendants who have already moved for dismissal of these claims twice. Furthermore, any amendment would be futile. As to the first five complaints, no amendment would be able to alter the nature of these complaints as employee grievances which are

not protected under the First Amendment.  As to Plaintiff's complaint of racial discrimination in May 2009, this complaint was made shortly before the Plaintiff left her position at West Chester and the hostile work environment of which Plaintiff complains was created far prior to this May 2009 complaint. Therefore, the Plaintiff's First Amendment claims will be dismissed with prejudice.

### F.  Plaintiff's Equal Protection claim

The final count of the Plaintiff's complaint is also brought pursuant to 42 U.S.C. § 1983 and alleges the Faculty Defendants violated the Plaintiff's right to equal protection under the Fourteenth Amendment.  Specifically, the Plaintiff alleges that she was treated differently on the basis of her religion when she interviewed for the Assistant Professor position.

The Faculty Defendants argue that this claim should be dismissed because the Plaintiff has not adequately alleged an equal protection violation.  In particular, the Faculty Defendants contend that the Plaintiff's complaint fails to identify similarly situated individuals outside the plaintiff's protected class who received more favorable treatment.

The Plaintiff in opposition maintains that the complaint sufficiently alleges that the other applicant for the Assistant Professor position who did not share Plaintiff's religious beliefs was treated more favorably than Plaintiff during the

interview process.

In order to state a claim for denial of equal protection under the Fourteenth Amendment pursuant to § 1983, a plaintiff must allege she is a member of a protected class or exercised a fundamental right and similarly situated members of an unprotected class or members that did not exercise a fundamental right were treated differently than the plaintiff.  Pollack v. City of Philadelphia, No. 06-4089, 2007 WL 576264, at *4 (E.D. Pa. Feb. 16, 2007)(citing Young v. New Sewickley Twp., 160 F. App'x 263, 266 (3d Cir. 2005)).

Here, the Plaintiff has sufficiently alleged that the other applicant for the Assistant Professor position who did not share Plaintiff's religious beliefs was treated more favorably than the Plaintiff.  Specifically, the Plaintiff's complaint alleges the Plaintiff was subjected to discriminatory treatment during her interview for the Assistant Professor position and the other applicant was not.  The complaint alleges that the Plaintiff's recommender was vigorously questioned while the other candidate's recommender was not similarly questioned.  The complaint also alleges that the other candidate was not as qualified for the position as the Plaintiff because the other candidate lacked teaching experience.  Finally, the complaint alleges that the other candidate was ultimately recommended by the Faculty

Defendants for the Assistant Professor position.[4]

Therefore, the Plaintiff's complaint sufficiently states a claim against the Faculty Defendants for violating the Plaintiff's right to equal protection under the Fourteenth Amendment.

## IV. CONCLUSION

For the reasons discussed herein, the Defendants' first motion to dismiss will be DISMISSED AS MOOT. The Defendants' second motion to dismiss will be GRANTED IN PART and DENIED IN PART.

The Plaintiff's claims alleging violations of Title VII against the individual faculty defendants and Plaintiff's claims alleging violations of her First Amendment right will be dismissed. This dismissal will be with prejudice as any amendment would be futile.

The Defendants' motion to dismiss as to Plaintiff's Title VII violations against West Chester University and Plaintiff's equal protection claim against the individual faculty defendants will be DENIED. The Plaintiff has adequately alleged a claim for religious discrimination in violation of Title VII and a violation of her right to equal protection under the Fourteenth

---

[4] These factual allegations are adequately incorporated into Count VI of Plaintiff's complaint alleging the Faculty Defendants violated the equal protection clause. (Am. Compl. ¶ 127) (incorporating the foregoing paragraphs of the complaint in their entirety as if set forth in full).

Amendment.   The accompanying Order will be entered.

March 29, 2012
Date

JEROME B. SIMANDLE
U.S. District Judge